HIRAM DAILY v. RICHMOND AND DANVILLE RAILROAD COMPANY.

*Negligence—Damages—Idiot—Intoxication—Crossing.*

1. A., an idiot, and under the influence of liquor, crossed a railroad track at a usual place of crossing in or near a populous town, and was struck and injured by a passenger train, running at about the usual speed of twenty or twenty-five miles an hour. Owing to obstructions near the track, upon another railroad, he could not have seen the train until within six feet of the track he was crossing. It did not appear how near the train was to him, nor whether the engineer saw or could have seen him in time to have stopped: *Held*, that it was not error in the Court below to decide that plaintiff could not recover in any view of the case.

2. Even if the engineer had seen him crossing the track in time to stop his train, and did not know of his infirmity, he was justified in assuming that he would get off in time to avert danger, and he was not bound to check its speed. If he (the engineer) carelessly refrained from checking speed, when he might, without injury to the passengers, have averted the injury, he is guilty of negligence, even though the party injured was guilty of contributory negligence.

CIVIL ACTION, tried at February Term, 1889, of the Superior Court of CATAWBA County, before *Philips, J.*

This action was to recover damages in the sum of $2,000 against the defendant above named for injuries suffered by Hiram Daily, an idiot, said injuries alleged to have been caused by the negligence of the defendant.

W. A. Clay, a witness for the plaintiff, testified as follows: "I live in Hickory; I am a boot and shoe maker; my shop is west of the public square and depot. The street from east to west is Morganton street—two pass-ways. The railroad runs between the streets; both the streets, including the railroad track, is 150 or 200 feet. The wide-gauge is the Western N. C. R. R.; the narrow-gauge is the Chester and Lenoir N. G. Road. They run side by side half mile or more. I saw Daily the day he was hurt; I spoke to him; I said, 'Come in, it's raining.' He passed by my shop; was going in the direction of his home. There is a foot-way that crosses the railroad; I have known it four or five years. I saw him after he was hurt."

John Watson, a witness for the plaintiff, testified as follows: "I was in Hickory and saw Daily; me and Howell Harris were sitting side by side; heard a train, and we saw a man cross the railroad; we remarked when the train struck him, 'There goes a drunken man.' The train was coming as fast as the Narrow-gauge Road; this was 700 feet from the depot; rainy day; wind blowing, carrying sound toward the west; I heard no bell and no whistle. This pass-way was

first used as a wagon-way; then it was annulled as a wagon-way and used as a pass or foot-way; it is generally used as a foot-way. I have been in Hickory fourteen years. It was in the evening; down-train, 5:14, but it was a little behind. There were three box-cars on the Narrow-gauge Road. He could not get across without going around the box-cars. Daily could not have seen the descending train until he got to the track of the W. N. C. R. R. He was struck with the bumper on the top of the cow-catcher; the bumper struck him; it knocked him ten feet, or further."

*Cross-examined.*—" I came from Caldwell County. There are four passenger trains and four freight trains, and two more construction trains—ten trains in all; six trains on the other road—sixteen in all daily. The box-cars were on the Narrow-gauge Road. There might have been some flat-cars. The train was coming from towards Morganton. Came down the cars on side-track and started across. He made no halt; didn't look up. Four or five feet between the side-track of Narrow-gauge to Narrow-gauge; this is three and one-fourth; then there is five feet from the Narrow-gauge to the main track. He could · have seen train if he had looked. I saw the train and heard it. We said, ' There goes a drunken man.' We thought he must have been drunk to attempt to cross the road. Took place in 1887. The suit was brought. I didn't expect any suit. I wasn't asked any questions. Don't know when I first said I didn't hear any whistle. I don't swear the bell didn't ring, or the whistle didn't blow."

*Re-direct.*—" The Narrow-gauge had a side-track at the time. That plat is a correct plat of the track at the time, that has been shown to me, and that I have spoke of." Witness testified to accuracy of plat shown him by defendant's counsel.

M. E. Bradford, a witness for the plaintiff, testified as follows: " I was in Hickory the day that Daily got hurt. I

know nothing about the train striking him. I saw him after he was struck. His leg was broken in two places; hip knocked out of place. He is a pretty bad cripple. He was confined to his bed for two months. I have been in Hickory thirteen years. It was first used as a wagon-crossing. About eight years ago the town stopped keeping it up as a wagon-crossing, and it is used as a foot-crossing. The R. & D. Railroad control the road. I live seventy-five or eighty feet from the mother of plaintiff. Hiram generally used this crossing in coming from town to his mother's. The Narrow-gauge had some iron on the R. & D. near this crossing. There was but one track of Narrow-gauge at that time, when the plaintiff received the injury. At that time there was six feet between the Narrow-gauge and the Western road. The train was behind time, and was coming tolerably fast. Daily was struck two hundred yards from the depot. Narrow-gauge runs twenty miles an hour. That crossing is two hundred feet from the public square. I don't know how fast the train was running at the crossing, but it was running pretty fast little over a half mile before it got there to the crossing where the injury occurred. He has been cautioned by the citizens. He is an idiot. He is afraid of the train."

*Cross-examined.*—" He was cautioned because he was an idiot. He has crossed the track many times when he had no business. I don't think that there was any side-track at that time on the Narrow-gauge. I didn't know about any box-cars on the track. I didn't see any box-cars, nor did I see the man until he was hurt. The train was about half hour behind. The town put this crossing there. The company leaves cars on the track now. Depot is the centre of the public square now. The section hands work along the ditch, and take it up and put it back."

*Re-direct.*—" This was about the only convenient pass-way along there; population is about 2,500 or 3,000; Narrow-gauge stops across street-crossing sometimes."

*Re-cross.*—"Hickory is a long town; built on either side of railroad mostly."

Howell Harris, a witness for the plaintiff, testified as follows: "I saw the plaintiff when he was hurt; I was sitting down within 250 yards of the place, looking up the road; he, the plaintiff, was going right across the track when the engine struck him; there was one flat-car, loaded with dirt, right across this foot-crossing; he could not see the descending train until he passed this car on the track; when he stepped off the Narrow-gauge he would be in six feet of the main track."

*Cross-examined.*—"The track at the crossing is a little higher than the street; the dirt was on flat-cars, and was there to put under the depot; they were fixing to lay some track and getting some dirt; the tracks have all been changed now; plaintiff did not look; could have seen if he had looked; didn't stop, just come right across; and there were five or six feet between the tracks; I heard the blow and they began to ring the bell about this crossing; there was a train due; the cars on the track were loaded with dirt."

*Re-direct.*—"I heard the station whistle; this is the place they generally begin to ring the bell."

Mrs. Daily, mother of the plaintiff, testified as follows: "He was badly crippled; his leg was broken in two places; hip was stove up; his elbow was stove up; his hip appeared like it was bursted from back-bone; he can't do anything, hardly; one leg is longer than the other; he can't stoop down to pick up anything; before that he could tote water and make fires; could send him anywhere; I am a widow; he is the only child I have with me; he was afraid of the train; would catch me when the train come on, when I was there; he suffered much; I never received anything from the railroad; Dr. Baker said he tried to get something when he got his pay, for attending him; he is forty-six years old."

106—20

Robert McLean, a witness for plaintiff, testified as follows:
" The section master of Western road kept up that cross-
ing; three section hands."

*Cross-examined.*—" When we come along to work we took
them up and put them back; I didn't know when it was
used as a wagon-way; I saw the train come in; I didn't see
it strike the man."

When the examination of the witnesses for the plaintiff
was concluded, the Court, after argument, intimated an
opinion that, upon the plaintiff's own evidence, he was not
entitled to recover; that he contributed to his injury by his
own negligence.

The plaintiff asked, upon this intimation, and obtained,
leave to submit to a nonsuit, and then appealed, alleging for
error the aforesaid intimation and ruling of the Court.

No counsel for plaintiff.
*Mr. George F. Bason*, for defendant.

AVERY, J.—after stating the facts: We concur with the
Court below in the opinion that plaintiff is not, in any
view of the testimony, entitled to recover. He could not,
according to the evidence, have seen the approaching train
until he stepped off the Narrow-gauge road and was within
six feet of the main track along which it was coming.
There is no testimony tending to show how near it was to him
when he attempted to cross, and it would have been impos-
sible for the jury to have determined whether the defend-
ant's agents were negligent in failing to stop the train (if it
was their duty to make any attempt to stop at all) without
information as to the actual distance between him and the
engine at the moment when he passed upon the track in
front of it, and in the absence of proof as to the number of
yards within which the train could have been stopped by
the use of all the appliances at the command of the engineer,

DAILY *v.* RAILROAD.

after he saw, or might, by reasonable care and watchfulness, have seen the plaintiff on the track. But if the witness had thrown additional light upon the transaction by giving the data mentioned, the plaintiff's right to recover would not still have been established, even *prima facie,* unless there had been evidence also tending to show that the engineer knew him when he saw him upon the track, or could, by the exercise of ordinary care, have seen him, and had actual knowledge, or reasonable ground for the belief that, on account of some mental or physical infirmity, he could not assume that plaintiff would step off the track in time to escape injury. If, with such actual knowledge or information, the engineer carelessly refrained from all effort to check the speed of the engine, when he might, without peril to the passengers on the train, have prevented the injury by stopping it short of the point where plaintiff was stricken, then the defendant was liable in damages, notwith-standing the negligence of the plaintiff. 2 Woods' R. L., § 320; *Parker* v. *Railroad,* 86 N..C., 221; Wharton Neg., 389*a; McAdoo* v. *Railroad,* 105 N. C., 140. In the absence of actual knowledge or information as to the plaintiff's infirmity, and of opportunity for recognizing him, the engineer was justified in assuming that the plaintiff was a man of ordinary intelligence and would get off the track in time to avert danger, and that it was not necessary to delay the train by checking its speed merely because an appar-ently and presumably reasonable human being was cross-ing at a point far enough in his front to enable him to stop it, if he chose, before reaching such a person. *McAdoo* v. *Railroad, supra.*

No error.                                 Judgment affirmed.