W. G. PURNELL, Administrator of Robert B. Purnell v. THE RALEIGH AND GASTON RAILROAD COMPANY.

(Decided April 12, 1898).

*Action for Damages—Non-Suit—Hinsdale's Act—Railroads—Injury to Person on Track—Negligence—Contributory Negligence—Evidence—Instruction.*

1. Prior to the passage of Chapter 109, Acts of 1897, the defendant might at the close of plaintiff's evidence in chief move to dismiss the action, as upon a demurrer to the evidence, but, if refused, the benefit of the motion was lost and, if renewed at the close of the evidence subsequently offered, the motion would then depend upon the whole evidence in the case; but now, since the passage of said Act, the defendant has the right to have the ruling of the Court reviewed upon the state of the case as it existed at the time of the motion, at the close of the plaintiff's evidence in chief.

2. On a motion for non-suit under Chapter 109, Acts of 1897, every fact that plaintiff's evidence tends to prove must be taken as proved.

3. Where, in the trial of an action for damages for injuries resulting in the death of plaintiff's intestate, it appeared that deceased went upon the track of defendant Company under a railroad shed containing five tracks and not lighted by defendant and dark, except so far as the darkness was relieved by the reflection of lights from a hotel and stores on either side of the shed and from a passing train of another railroad company; and that the shed was a common resort for the people of the town, and that through and across it and across the track of defendant company thereunder, was a frequented passway for the public with the consent of the defendant; and that deceased was standing on the passway when defendant's train, four hours late, backed under the shed without light or flagman, at the rate of four miles an hour, and ran over and killed the deceased; *Held*, that such facts raised an issue of negligence to be submitted to the jury.

4. In such case the evidence of witnesses to the effect that they were there and did not see lights or flagman where they should have been, although negative evidence, was competent as tending to prove that such lights and flagman were not on the backing train.

5. Where, in an action for damages for the negligent killing of plaintiff's intestate by the backing of defendant's train under a shed which

was an accustomed thoroughfare, the Court instructed the jury that if defendant backed its train under a depot shed "without displaying a light from the front end of the leading car and without having a flagman stationed thereon" it was negligent; that if deceased was standing on the track he was not required to look out for a backing train "which displayed no light and had no flagman," as it was the duty of defendant "to display the light and have a flagman at his post," and that, if defendant backed its train under the shed "without the light on the front end of the leading car, or in a conspicuous place thereon, or without a flagman thereon" it was negligent. *Held*, that the charge did not mean that there should have been both a light in the hands of some person (or held by some other means) and also another person acting as a flagman.

6. In the trial of an action for damages for the killing of plaintiff's intestate by the negligence of defendant railroad company in backing its train under a depot shed frequented by passengers and townspeople, an instruction that if deceased was standing on the track and defendant backed its train without light or signal, the defendant was negligent and the negligence was the cause of the injury, was proper when, in the same connection, the Court charged that defendant was not liable if deceased discovered the train in time to escape by ordinary care.

FAIRCLOTH, C. J., and CLARK, J., dissent.

CIVIL ACTION for damages for injuries resulting in the death of plaintiff's intestate, tried before *Timberlake*, J., and a jury, at May Term, 1897, of HALIFAX Superior Court. The facts appear in the opinion. There was a verdict for the plaintiff for $5000 and defendant appealed.

*Mr. R. O. Burton*, for plaintiff.

*Messrs. MacRae & Day, Thos. N. Hill* and *J. B. Batchelor* for defendant, (appellant.)

FURCHES, J.: Plaintiff's intestate was run over and killed by a freight train of the defendant company, and this is an action for damages.

122—53

There was evidence tending to show that defendant has, and maintains a large shed, 275 feet long and 80 feet wide in the thickly settled and the business part of the town of Weldon; that under this shed there are as many as five railroad tracks, and the trains and cars of four different roads pass under and through this shed; this shed was used as a depot for these different roads, where they received and discharged their passengers, and was a place of general resort for the inhabitants of the town, and all other persons; that on the night of the 18th of October, 1895, about 9:30, when the passenger train of the Atlantic Coast Line (this being one of the roads that used and occupied the shed) was leaving, the defendant company backed a freight train under this shed, which ran over and killed the plaintiff's intestate; that it was dark under this shed, which was not lighted except from lamps of the "Coast Line Hotel" and the Coast Line mail and passenger train, composed principally of "sleepers," which gave little or no light, and which was between the hotel and the defendant's freight train that killed the intestate of plaintiff, and such light as was reflected from some buildings across the street on the opposite side of the shed from the "Coast Line" Hotel; that defendant's train was due at 5:30 but was belated until 9:30, and was being pushed backwards at a speed of not more than four miles an hour, and the intestate had been on the track but a few minutes when he was run over and killed.

The plaintiff contended that there was no light or lantern displayed from the front end of the leading car of the backing train, and that there was no one there acting as flagman or signalman, in charge of the backing train, as there should have been.

For the purpose of proving these allegations, the

plaintiff introduced several witnesses who testified that they were there; that it was dark; some of them say it was very dark and they saw no light, nor did they see any one on the car with a light or lantern.

With this evidence, the plaintiff rested his case, and the defendant moved to non-suit him under chapter 109, Acts of 1897, contending that the plaintiff had not made a *prima facie* case; that, taking everything to be true, the plaintiff's evidence proved or tended to prove that plaintiff had failed to show negligence on the part of defendant.

The court refused the motion to dismiss and the defendant excepted, and then proceeded to introduce evidence, and the trial proceeded to verdict and judgment against the defendant.

The defendant contends, now, that the Judge erred in not dismissing the plaintiff's action at the conclusion of this evidence in chief, and insists that he is entitled to have the court reviewed upon that motion. The plaintiff contended that the court committed no error; that he is not so entitled, and this brings the construction of this statute before us for the first time.

As we understand the practice of the courts before this statute, the defendant might make this motion, but if the court refused it and the defendant offered further evidence, he lost the benefit of that motion. The motion could be renewed at the close of the evidence in the case, but would then depend upon the whole evidence offered in the case. *Sugg* v. *Watson*, 101 N. C., 188.

To give this statute the construction contended for by the plaintiff. would be to make it meaningless, and to leave the law as it was before its passage. This we cannot do. Whether its enforcement will tend to the

advancement of justice or to the economy of time, is not for us to say.

The rule it has changed is one of long standing, with the approval of this Court. But it was within the province of the Legislature to change it, and in our opinion it has done so. We must, therefore, hold that the defendant has the right to have the ruling of the court reviewed upon the state of the case as it existed at the time the motion was made.

This brings us to a review of the Judge's ruling in refusing the defendant's motion to dismiss the plaintiff's action at the close of his evidence in chief.

This motion is substantially a demurrer to the plaintiff's evidence. And this being so, and the court having no right to pass upon the weight of evidence, every fact that plaintiff's evidence proved or *tended* to prove must be taken by the court to be proved. It must be taken in the strongest light, as against the defendant.

Then the plaintiff's evidence proved or *tended* to prove that the defendant kept and used a shed 275 feet long and 80 feet wide, under which there were five railroad tracks, used in common by defendant with three other railroads; that this shed was the depot for all these roads in receiving and discharging their passengers; that it was not lighted by the defendant, and that it was dark under this shed; that it was a place of common resort for the inhabitants of the town and all other persons; that there was a frequented pass-way across the railroad tracks under this shed, which was used with the knowledge and consent of the defendant; that defendant's train that killed the intestate of plaintiff was not on schedule time—was due at 5:30, but did not arrive until 9:30, when the intestate was killed; that this train was backing under this dark shed at a

rate of speed not greater than four miles an hour, without light, or flagman, or signalman on the front of the leading car of the backing train.

It is true that it was contended by the defendant that plaintiff's evidence failed to prove—to establish—the fact that there was no light and no flagman on the front of the leading car; that plaintiff's witnesses only testified that they were there, that it was dark, and they saw no light or flagman. This was negative but competent evidence. *Henderson* v. *Crouse*, 52 N. C., 623. This evidence was competent and not objected to. It was evidently introduced for the purpose of showing—proving that defendant had no light or flagman on the car. If it did not prove this, nor *tend* to prove it, it was incompetent and should have been objected to by defendant. But if it tended to establish the fact, could the court say that it did not do so? If it did tend to do so—and this proposition seems too plain to call for authority or argument—it was then no longer a question for the court, but an issue for the jury—the court has no right to pass upon the weight of evidence. *Sugg* v. *Watson, supra.*

We have not said and do not say that the evidence introduced by plaintiff established negligence in the defendant. It is not necessary, in the consideration of the Judge's ruling upon defendant's motion to dismiss, that we should do so.

But we say the evidence *tends* to establish the facts as we have stated them, and it then became an issue of fact for the jury and not a question for the court. There was no error in refusing defendant's motion to dismiss under the Act of 1897.

The discussion of this case so far has been as to the duty of the court under the Act of 1897, chapter 109.

The discussion has involved the question as to defendant's negligence. But the question as to whether the plaintiff's intestate was guilty of negligence or not, has in no wise been discussed.

We have seen that there was evidence tending to show negligence on the part of defendant at the close of the plaintiff's evidence.

And it is insisted by plaintiff that there was much more, going to show defendant's negligence, at the final close of the evidence, than there was at the time the defendant moved to dismiss under the Act of 1897.

The burden of the issue as to defendant's negligence was on the plaintiff. But, whenever the evidence tended to show negligence on the part of the defendant, it then became an issue to be found by the jury under proper instructions from the court. The jury has found this issue against the defendant, and it must stand unless there has been improper evidence allowed to the prejudice of defendant, or the court has given the jury improper instructions, or has failed to give proper instructions asked by defendant.

The burden of establishing the second issue, "Did the negligence of the plaintiff contribute to cause the injury?" was upon the defendant. The jury has found this issue against the defendant, and it must stand unless the court has committed error in the charge or in admitting or refusing evidence.

The prayers of defendant for instructions, and exceptions to the charge, and for failing to give instructions asked, are so numerous—many of them involving the same questions of law—that we will not undertake to give each a separate treatment. This fact is recognized by the learned counsel for defendant in their well considered brief, as they only discuss the 4th, 5th and 6th

exceptions, found on pp. 50, 51, 52 of the printed re-
cord, and one other exception as to evidence on p. 45.

The principal exception discussed in defendant's brief
is the exception to the following paragraph of the
Judge's charge, which in substance covers all the excep-
tions to the charge :

"Again, if the train was backing under the shed with-
out displaying the light from the front end of the lead-
ing car and without having a flagman stationed thereon,
and was backing without due care and the intestate
knew it and placed himself in a position of danger, his
negligence was the proximate cause of the injury—he
had the last chance to avoid the injury—and this being
so, he and not the defendant would be responsible for
his death.   On the contrary, if Purnell was standing on
or near the track he was not called upon to look out for
a backing train which displayed no light and had no
flagman, if you should so find, on the front of the lead-
ing car, for it was the duty of the defendant, as before
explained, to display the light and have a flagman at
his post, he not being bound to expect a violation of
duty.  If, therefore, he, Purnell, was standing on or
near the track and the defendant backed its train under
the shed without the light on the front end of the lead-
ing car, or in a conspicuous place thereon, or without a
flagman thereon, and if the jury should further find
that Purnell did not discover the train in time to escape,
then the defendant was negligent, and such negligence
was the cause of the injury."

The criticism upon the charge is two-fold—that it
charged the jury that there must have been a light in
the hands of one person, or held by some other means,
and also a separate person acting as flagman or signal-
man of the moving train.   Whatever effect this excep-

tion might have, if true in fact, we are not called upon to say, as in our opinion a fair interpretation of the charge does not mean this.   As we understand the matter, there must be both a man and a light at night, and a man and a flag in day.   It may be one person but he must have a light, and this is what we understand the Judge to charge.

This man, called a flagman, is in control of this backing train.   The train is moved and stopped at his discretion.   This is done in the day time by the use of a flag, and at night by the use of the light.   By these means he informs the man in control of the engine when and how to move the train.   At night, the light is used not only for the purpose of signaling the movement of the train, but also to enable the flagman to lookout for danger and to give notice to all persons of the approach of the train.   This is regarded so essential to the safe operation of the road, that the defendant has adopted a rule to this effect, which it has had printed in a book of instructions and made a part of the evidence in this case.

This charge was given as applicable to the facts in this case, of a train backing under this dark shed, a public thoroughfare, four hours late, and at a time when the passenger train on one of the other roads was just leaving.

To hold that it could thus back in, without light or flagman, would be to overrule *Lloyd* v. *Railroad,* 118 N. C., 1010, and authorities there cited.   *Stanley* v. *Railroad,* 120 N. C., 514; *Mesic* v. *Railroad,* 120 N. C., 489.

The other portion of this exception is pointed as follows: "Defendant further excepts to so much of the foregoing paragraph as holds that, if intestate was standing on or near the track and defendant backed its train under the shed without the light on the front end or in

a conspicuous place thereon, or without a flagman, &c., the defendant was negligent, and such negligence was the cause of the injury."

It will be seen that defendant in pointing this exception has left out of the charge quoted the following sentence, "and if the jury should further find that Purnell did not discover the train in time to escape, then the defendant was negligent." This it seems to us makes a material difference in the charge, and especially so when taken in connection with the following paragraph, which comes after that excepted to, and which is as follows:

"If the jury should find that Purnell was standing on or near the track and knew that defendant's train was backing under the shed with or without lights, or with or without a flagman, then he was bound to lookout for his own safety and the jury should answer this issue, yes. Again, if you should find that the train was backing with its light *and* flagman in position, though the plaintiff's intestate did not know it, it was his duty to be on the lookout for all trains that had proper lights and signals, and if he failed he was negligent, and your answer to this issue should be, yes."

The lines between what is negligence and what is not, and what is contributory negligence and what is not, are sometimes so dimly drawn that it is hard to keep from crossing them. But, taking the whole charge in this case (set out in full in the record), we find it full, clear and distinct to a degree sometimes not attained in cases of so much complication, and it appears to us to be entirely fair to the defendant.

This disposes of the case, except as to the evidence of some one that measured the car and gave his opinion, and the evidence of the sister of the intestate that the

deceased was there to meet some one he expected on the train.   We are not able to see that this evidence did or could have influenced the finding of the jury.   The judgment is affirmed.

Affirmed.

FAIRCLOTH, C. J., dissenting:   I agree with the majority of the Court in its construction of the Act of 1897, chapter 109.   I am unable to agree with the Court on the question of contributory negligence on the part of the plaintiff's intestate.   I think the defendant was guilty of negligence, and that the plaintiff's intestate was guilty of contributory negligence on the evidence, and that the Court should have so held as a matter of law without submitting the second issue to the jury.

I do not recite the evidence, as it fully appears in the case.   The evidence that the train was backing under the shed at a speed not more than four miles an hour and that the bell on the engine was ringing all the time —that there were two lights under the shed on the hotel side and some lights in business places on the opposite side of the shed, and that the defendant's track was the second one from the latter named lights, is not contradicted by any witness or denied in the argument.   A few witnesses said it was very dark under the shed, but they do not deny the existence of the lights located as stated above.   It does not appear that there was any obstruction between the backing train and the lights on the east side of the shed, and we can take notice that lights will cast their rays out and produce some light, such as the bulk of the witnesses say was present, and called by them "dim lights" at the place of the injury. The intestate was necessarily on the track when hurt, instead of the safe spaces between the tracks, and no witness says otherwise.   That he was looking across

the shed at another train, instead of looking along the track north, on which he voluntarily took his stand and that he stepped on the track so recently before he was struck as to give the defendant *no last chance* to avoid striking, is not contradicted by any of the evidence. A railroad track is universally regarded as a place of danger, and all authorities require persons going along or crossing the same to look and listen for trains. This is prudent and the exercise of ordinary care only. It does not appear that the intestate was doing either; in fact, it appears that he was otherwise engaged and looking across the tracks under the shed. If he had exercised such ordinary care, I cannot understand why he would not have under the present circumstances discovered an object the size of a freight car within a few feet of him, nor why he would not have heard the noise of a moving freight train. I am aware of the rule that in doubtful cases the better course is to submit the questions to a jury. There is another rule equally well settled, and that is that the Judge should not submit a question to the jury unless the evidence be of such a character that it would warrant the jury in returning a verdict against the party introducing it, who has the burden of proof. The duty of deciding such questions is a delicate one, and I think it can be best performed by the application of reasonable common sense rules in each case. I think upon the case now before us the plaintiff is not entitled to recover any damages.

CLARK, J., dissenting: The defendant asked the Court to instruct the jury "If, by the exercise of reasonable care, the plaintiff's intestate might have seen the approaching train and escaped from the danger, and

failed to keep a reasonable lookout, then they must respond to the second issue (contributory negligence) 'Yes'." The defendant was entitled to this instruction without the modification added by the Court, which was in effect, "Provided defendant had not been negligent." Whether the defendant had been negligent or not did not affect this proposition, that, if the plaintiff's intestate, by reasonable care, might have escaped the danger, he was guilty of negligence. The defendant had a right to have that issue fairly put to the jury and it was in no wise dependent upon the defendant's being negligent or not. If, notwithstanding the contributory negligence, the defendant with proper care, might have avoided the injury, is the inquiry presented by the 3rd issue, and the result upon all the issues submitted would then be for the Court. The defendant was seriously prejudiced by this ruling, which was in effect that the plaintiff's intestate could not be guilty of contributory negligence if the defendant was negligent, and reduced the three issues in effect to one, *i. e.* Was the defendant negligent? Whereas the defendant was entitled to the substantive finding whether there was contributory negligence. If there was, and the defendant was negligent, there could be no recovery unless, nothwithstanding the contributory negligence of the plaintiff's intestate and subsequent thereto, the defendant could have avoided the consequence thereof. *Pickett* v. *Railroad*, 117 N. C., 616. The court, in effect, told the jury that, though the plaintiff's intestate by the exercise of reasonable care might have seen the approaching train and escaped injury and did not so escape because he failed to keep a reasonable lookout, he could not be guilty of contributory negligence if the defendant had been negligent. The jury, therefore, were forced to respond "No" to this

issue, if they found that the defendant had been negli-
gent, whereas, if the defendant had been negligent
and the plaintiff's intestate had been guilty of con-
tributory negligence, there could be no recovery un-
less there had been subsequent negligence on the part
of the defendant.   In the present case the jury did not
find upon that issue at all.   The only defence to such a
charge is that no one can be guilty of contributory neg-
ligence on a railroad track at night—a position that has
never yet been maintained in any decision of any court.
In *Lloyd* v. *R. R. Co.*, 118 N. C., 1010, it was admitted,
and the opinion was based on the fact that the plain-
tiff's intestate was guilty of contributory negligence,
but it was held that, notwithstanding that, the plaintiff
could recover, if the defendant was guilty of the con-
tinuing and therefore subsequent negligence of failing
to have a head-light which might have enabled it to
avoid the killing.   In the present case the defendant
was entitled to the instruction it asked, and upon it the
jury, upon the uncontradicted testimony, would doubt-
less have found that there was contributory negligence.
How they would have found upon the third issue, as to
a subsequent or continuing negligence, we do not know,
for the case was made to turn entirely upon the question
whether there was negligence on the part of the defend-
ant, the court instructing in effect, that, if there was
such, the plaintiff's intestate, though he might have
escaped injury by the exercise of reasonable care, could
not be guilty of contributory negligence.   The other
case relied on to support this proposition is *Stanly* v.
*Railroad*, 120 N. C., 514, which went upon the ground
as to what was contributory negligence, and held that
it was error to say that it was such negligence to walk
thoughtlessly and recklessly along the track, when by
using his senses the plaintiff might have seen and heard

the train coming, since there was evidence that he was put off his guard by the train not having a light in front. But every case must be read in connection with the facts. There, the plaintiff "was walking along the track commonly used by the public between Durham and East Durham as a walking way;" he was looking in the direction the train was coming from, and it was held that being put off his guard by the absence of a light in front he was not guilty of contributory negligence in not having kept a strict lookout. That case goes to the very verge, but it is very far from sustaining the proposition that at night time no one can be guilty of contributory negligence on a railroad track, if the defendant has been negligent, nor that (as in this case) at a place with six tracks, which is not "habitually used as a walking path," but which is constantly used by the railroad companies night and day, a party who steps backwards on one of those tracks and is run over by a train rolling at the rate of 3 to 4 miles an hour, with its bell ringing, cannot be guilty of contributory negligence. There was uncontradicted evidence that the bell on the train (of only three cars) was constantly tolled, and the great weight of evidence was that there were lights besides on the front end. Whether, notwithstanding such negligence of the plaintiff's intestate, the defendant was liable by reason of its subsequent or continuing negligence is the third issue, and upon that there has been no finding.

The naked proposition charged below was: In the night time, no person can be guilty of contributory negligence on a railroad track, if the defendant is guilty of negligence.

This proposition is new, but it is clearly presented. It is not sustained by any precedent. Can there be any good and just reason found to support it?

This is not the case of crossing the track when the ordinary duty of looking and listening is condoned by there being no light on the approaching train, as in *Mayes* v. *Railroad*, 119 N. C., 758 and *Russell* v. *Railroad*, 118 N. C., 1098; but, here, the intestate visited the station of the defendant where he knew there were six tracks with trains constantly coming and going, and it was his duty to exercise ordinary care at least, and to stand between the tracks and not to take his stand upon one of the tracks, and especially not to take his stand thereon without reasonable care, without any lookout, and with his back to a train which was at that very moment approaching, ringing its bell as it very slowly rolled on. This certainly was contributory negligence, the jury should not have been told that it became not contributory negligence if the defendant was negligent.

The defendant asked the court to charge that "the place where the injury was done was known to the plaintiff's intestate to be a place of danger and it was his duty to keep a reasonable lookout when he went on the tracks, for approaching trains, and if he failed to do so it was contributory negligence." This surely the defendant was enttiled to, leaving the question whether the defendant was nevertheless liable by reason of its continuing or subsequent negligence to the finding and charge upon the third issue, but his Honor again refused, by adding in effect that the plaintiff's intestate, even under those circumstances, could not be guilty of contributory negligence unless the defendant was found not negligent itself—thus making the case turn solely upon the one issue of the defendant's negligence, and putting the burden on the defendant to prove it was not negligent too, whereas the burden was on the plaintiff to prove the negligence of the defendant.

The defendant further asked the Court to instruct the jury that "It was the duty of the plaintiff's intestate to keep a reasonable lookout when he stepped upon the track, and if he failed to do so and the agents of the defendant gave notice of the approach of the train by the lights and bell and signalman, there was no negligence on the part of the defendant, and the jury should respond to the first issue "No" and to the second issue "Yes." The court refused to give this without the proviso added (as before charged) that there must have been "a white light displayed *on* the front of the leading car *and* a flagman in a conspicuous place thereon." There was a vast preponderance of evidence that there was a flagman on the top of the advancing car, and near the front end, with two lights in his hand, but the jury were cut off from all benefit of this evidence by the oft repeated declaration of the court that the defendant was negligent if there was not "a light *on* the front of the advancing car *and* a signalman in a conspicuous place thereon," and that if the defendant was negligent in that regard no conduct of the plaintiff's intestate could make him guilty of contributory negligence. There was no evidence that Purnell would not have gone on the track but for the absence of lights, and the burden was on the plaintiff to prove that. *Deans* v. *Railroad*, 107 N. C., 686; *Rigler* v. *R. R. Co.*, 94 N. C., 604; *Parker* v. *Railroad*, 86 N. C., 221, bottom of page 227. *Troy* v. *Railroad*, 99 N. C., 298, is exactly in point. There, the accident occurred at night and the court below charged (p. 302): "Had the intestate used his senses he might have heard or seen the coming train. If he omitted to do so and walked thoughtlessly and carelessly on the track, he was guilty of culpable negligence and contributed to his own injury," and on appeal

this Court said "the charge of the court was given with care and stated the law fully and fairly." In the present case, deceased could see the tramp on top of a car, two cars length away, and on another track. It was his own negligence that he did not see this car within ten feet of him, but instead stepped on the track with his back to the approaching car. The second and third issues of the present case were in Troy's case included in the second issue, and, hence, the conclusion of the instruction which would have been contradictory to the charge if there had been a third issue. That case settles that, though an engine is run at night without a headlight, without sounding whistle or ringing the bell, a person getting on the track without due care is guilty of contributory negligence.

The defendant further asked the court to charge the jury that "If the noise of the Atlantic Coast Line train was so great that it prevented the plaintiff's intestate from hearing the approach of the defendant's train, the plaintiff's intestate should have used additional care and diligence in looking for the approaching train, and his failure to do so is negligence, and the jury should find the second issue "Yes". The court again charged in effect that the plaintiff's intestate could not possibly be guilty of contributory negligence, if the defendant was negligent, by adding, "*provided*, there was a light on the front end of the advancing train and a signal man in a conspicuous place thereon." Though the light might be there and the bell was ringing and the train moving slowly, the plaintiff's intestate could not be guilty of negligence, if that signal man was not there and in a conspicuous place. This is what the court told

122—54

the jury by making the instruction depend upon that proviso.

The defendant further asked the Court to instruct the jury that "if the plaintiff's intestate went under the shed to watch a tramp steal a ride on the Atlantic Coast Line train, and while so watching the tramp backed on the track on which the defendant's train was backing, and the jury are satisfied the defendant could not have avoided running into him, for the reason that the defendant cound not stop its train in time to have avoided the injury, then you will answer the first issue "No" and the second issue "Yes." There was plenary evidence to that state of facts, yet this prayer was unqualifiedly refused. The company had the right, even if its agent had seen Purnell in time, to assume that he would get off the track. *Meredith* v. *Railroad*, 108 N. C., 616; *High* v. *Railroad*, 112 N. C., 385; *Deans* v. *Railroad*, *supra*; *Daily* v. *Railroad*, 106 N. C., 301; *McAdoo* v. *Railroad*, 105 N. C., 140.

The evidence was uncontradicted as to these facts: that the plaintiff's intestate went to the station, where there were six tracks constantly in use, to escort a tramp to steal a ride on a train going South, and was actively aiding him by preventing by-standers from making a noise which would cause his detection, and while doing so, and as the train was pulling out, he stepped backwards upon the track of the defendant's road and was struck from behind by a shifting train of three cars, moving at the rate of three or four miles an hour, with the bell being constantly rung, the whistle not being sounded because forbidden by a town ordinance. These facts were not controverted.

By a very great preponderance of evidence it was shown that there was a brakeman near the front end of

the advancing car with a red light and a white light in his hand.   There was some evidence tending to show that there was no light on top of the train   It was also in evidence that the conductor was walking along by the side of the train with a lantern in his hand, and that the plaintiff's intestate stepped backwards on the track so near the front of the moving train that it was impossible to stop it in time to save him.   But upon these facts and phases of the question, the court constantly instructed the jury, time and again, that the plaintiff's intestate could not by any want of care be guilty of contributory negligence if the defendant "failed to have a light *on* the front end of the leading car *and* a signalman in a conspicuous place thereon.".

There is no precedent that under such surroundings a person cannot make himself guilty of contributory negligence if the defendant is also negligent.   Pickett's case and Lloyd's case were as to the duty to helpless persons subsequent to their contributory negligence.   In Mays' case and Stanly's case, the track was used for customary purposes and no signal was given.   In this case, the track was not a thoroughfare and the bell was constantly rung, the whistle being forbidden to be used by a town ordinance.

This would be hard measure to mete out to railroad companies.   They are entitled to the unrestricted use of their tracks.   They are chartered for that purpose. They are not insurers of the safety of every individual who sees fit to place himself on their tracks at the same time they are in actual use.   If the company is negligent, a person who is injured cannot recover, notwithstanding the defendant's negligence, if he could have avoided the injury therefrom, and failed to do so by his own negligence. *Meredith* v. *Coal & Iron Co.*, 99 N. C.,

576; *Farmer* v. *Railroad*, 88 N. C., 564. The only exception to this is where the defendant by reasonable care could have subsequently avoided the accident, notwithstanding the negligence of the party injured. Whether that was the case here is a fact not passed upon by the jury, upon the instructions which were, in effect, that if the defendant was negligent the plaintiff's intestate could not have contributed to the injury by his own negligence. Surely in this there was error.