CLARK and DOUGLAS, J. J., dissenting.
Sidney Lea, the intestate of the plaintiff, was run over and killed by defendant's freight train in the city of Durham, about 8 o'clock in the morning, on or about the 1st day of November, 1900. The defendant, for the purpose of making up a freight train, was moving two freight cars, with an engine between them, and the deceased was standing on the end of the cross-ties of the defendant road.
The defendant's track is on the north side of one of the streets of Durham, and is not used as a street, though persons occasionally travel it on foot, there being a clear street of fifty feet besides that portion occupied by defendant's road, kept up by the city as a street, and was in good condition at that time. There was no one on the front car in the direction the train was moving at the time the intestate was killed. And it was in evidence that the city of Durham had an ordinance against running a train more than eight miles an hour; and there was evidence tending to show that this train was running at a greater rate of speed than the ordinance allowed at the time the intestate was killed. There was also evidence tending to show that no bell was rung or whistle sounded by the defendant. Wiley Weaver, a boy about 14 years old, testified: "We walked near the track about ten minutes; we were going around to see the town; went by a fine house, looked at the yard, and went by a street near the railroad, and we stopped to look at some letters on the house, and then we stepped out there to look at the train couple up; and he asked me if I knew what the letters were, *Page 461 
and I told him `No,' I did not; to come and let us go to market; he said to hold on a minute, he would see the train couple up and he would go, and I turned around and said, `Come on, I'm in a hurry,' and he said, `Go on, I'll catch you,' and I turned and looked back and the train was in about two yards of him, and I told him to look out, the train would run over him, and that is all I think of; * * * about the time I called him, the train struck him on side under his arm rather from the back."
There are no exceptions in the Judge's charge, but at the close of his charge he says: "Defendant excepts to the Court, giving so much of the charge as is embraced in numbers 1 to 2, 3 to 4, and 5 to 6." And upon examination we find that no such numbers appear in the charge. This throws upon us the burden of examining the entire charge, or, in other words, makes it a broadside exception. There has certainly been carelessness in making up the case on appeal or in making out the transcript of record. But the point in the case, as we view it, seems to be sufficiently presented by the defendant's prayers for instruction and their refusal by the Court.
There are quite a number of prayers for instruction on the part of defendant. A number of them are refused "except as given in the charge", and, as the case is made up, there is nothing to point us to that part not given; while a number of them are refused without any reference to what is given in the charge, and we prefer to put our opinion on those.
The main question, and the one upon which the case depends, as we think, is the contributory negligence of plaintiff's intestate; and this is presented by defendant's fifth and seventh prayers for instruction, both of which the Court refused to give. The fifth prayer is as follows:
"That taking the plaintiff's evidence, and also the defendant's evidence (which latter does not furnish any contradiction *Page 462 
as bearing upon the third issue), and the conclusion could not reasonably be avoided that the plaintiff's intestate, by his own negligence, contributed to cause the injury."
The seventh prayer is as follows: "In this case, taking all the evidence together, there was nothing which placed the intestate at any disadvantage as regards avoidance of this injury, and when such is the case no recovery can be had when each party, that is to say, both intestate and the railroad company, were negligent."
We think the defendant and the intestate were both guilty of negligence; this was so found by the jury under the instruction of the Court, and was not excepted to. The intestate was killed in broad daylight, about 8 o'clock in the morning. It is true, he was killed in the city of Durham, on the defendant's railroad track, which is constructed on the north side of the street, not used as a part of the street — there being fifty feet of said street in good condition and unobstructed in any way.
It is contended by the plaintiff that this is a fact in its favor, in determining the liability of the defendant, but it does not appear so to us. It may be a reason going to show the defendant's negligence, but this does not help the plaintiff, as the defendant is found to have been negligent. And it may be a reason why the intestate should have exercised more care, as he was in town on the railroad track and saw that the road was engaged in shifting cars and making up a train. But this has but little to do with the case, as presented to us, as the intestate was also found to be guilty of negligence. Nor do we see that the testimony of Wiley Weaver affects the case. He says that he looked back, the train was in two yards of intestate, and struck him just about the time he called to him to lookout or he would be struck. This being so, the rate of speed at which the train was moving could have had no effect; it was too late when he called *Page 463 
to do any good, as the intestate was stricken just about the time this warning was given. The intestate was not killed at a street crossing, nor on a track much used, even as a footway. The case does not fall under any of the exceptions that require that the whistle should be sounded or the bell should be rung, or the train stopped. He was not an infant, as in Bottom's case, 109 N.C. 72; nor drunk and down, as in Lloyd's case,118 N.C. 1011; nor prostrate on the track, as in Dean's case, 107 N.C. 686; nor on a trestle, nor in any other dangerous situation putting him at a disadvantage, as in Clerk's case, 109 N.C. 430, or McLamb's case,122 N.C. 862; nor was it in the night time with no headlight, as in Stanly's case, 120 N.C. 514, and Purnell's case, 122 N.C. 832; nor was he at a crossing, as in Edwards' case at this term. And the doctrine of the last clear chance — proximate cause — does not arise in this case. Both were guilty of negligence, and both were on equal terms. The intestate was at no disadvantage. He was on equal opportunities with the defendant. Neal v. Railroad, 126 N.C. 639. The intestate was, unfortunately, killed, but it will not do to say that the railroad company is liable in damages for every man killed by its trains.
So far as we remember, every principle involved in this case is decided in Neal's case, and that case must control this case. We do not think the plaintiff was entitled to recover upon the evidence.
There was another question presented by the case on appeal — as to the receipt given by the plaintiff — but we have not found it necessary to consider that matter.
There was error in refusing the fifth and seventh prayers of defendant for instructions to the jury.
Error — New Trial.