[Civ. No. 238.   Third Appellate District.—February 21, 1907.]

## EDWARD DOYLE, Respondent, v. JAMES C. ESCHEN et al., Appellants.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS OF FACT AND LAW.—Where the facts are such that reasonable men may fairly differ as to whether there was negligence or contributory negligence or not, in a case of personal injury, the determination of the matter is a question of fact for the jury.   It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is one of law for the court.

ID.—MIXED QUESTION OF LAW AND FACT.—Usually the consideration of negligence, including contributory negligence, involves a mixed question of law and fact, in which it devolves upon the court to say, as matter of law, what is or amounts to negligence, and upon the jury to say, as matter of fact, whether or not in the particular case the facts proved show negligence.

ID.—MOTION FOR NONSUIT—QUESTION OF CONTRIBUTORY NEGLIGENCE—FACTS TAKEN AS PROVED—INFERENCES AGAINST DEFENDANT.—Upon a motion for a nonsuit on the ground that contributory negligence is shown by the plaintiff's evidence, every fact that plaintiff's evidence proves or tends to prove must be taken by the court as proved, and must be taken in the strongest light against the defendant, and interpreted most strongly against him.

ID.—MOTION PROPERLY DENIED—QUESTION FOR JURY.—*Held*, that plaintiff's evidence, admitting that his testimony was somewhat inconsistent and partly absurd, does not show as matter of law that he was guilty of contributory negligence, and that it was proper to deny the motion, and to submit the question of contributory negligence to the jury.

ID.—COSTS—LEGAL PERCENTAGE IN SAN FRANCISCO—STATUTE NOT REPEALED.—The act of February 9, 1866 (Stats. 1865-66), regulating the recovery of a percentage in litigated cases in the city and county of San Francisco to be included in the judgment against the adverse party, was not repealed by the fee law of 1895, and the percentage allowed by that act is still recoverable.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. F. J. Murasky, Judge.

The facts are stated in the opinion of the court.

Van Ness & Redman, and L. A. Redman, for Appellants.

Sullivan & Sullivan, and Theo. J. Roche, for Respondent.

BURNETT, J.—This is an action for damages. It was occasioned by respondent falling into the hold of a vessel, through a ballast hatch in the lower deck. This hatchway, it is claimed, without the knowledge of respondent and without notice to him and when he had reason to believe and did believe it was closed, was left open and unprotected and without any lights about it, through the negligence of appellants, who were stevedores engaged in ballasting said vessel. Defendants in their answer, either positively or on information and belief, denied the material allegations of the complaint and alleged that "immediately after said hatch was uncovered and before said accident the employees of these defendants put a guard and fender around it and also placed lights near by it, which lights were burning at the time plaintiff fell into said hatch."

The case was tried before a jury. A verdict in favor of plaintiff for $7,500 was rendered. Defendant appealed from the judgment and the order denying their motion for a new trial and also from an order refusing to strike from plaintiff's memorandum of costs the item of $100, "alleged legal percentage on the judgment in favor of plaintiff herein."

At the close of plaintiff's evidence, defendants moved for a nonsuit, which was denied.

Among the reasons urged for reversal, appellants seem most confident of their contention that by reason of contributory negligence respondent was not entitled to relief and that their motion for a nonsuit should have been granted by the learned judge of the trial court. As so often affirmed by the higher courts, it is conceded that "when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where

the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." (*Texas C. Ry.* v. *Gentry*, 163 U. S. 353, [16 Sup. Ct. 1104].) And, furthermore, that usually the consideration of negligence, including "contributory negligence," involves "a mixed question of law and fact, in which it devolves upon the court, to say, as a matter of law, what is or amounts to negligence, and upon the jury to say as matter of fact whether or not in the particular case the facts in proof warrant the imputation of negligence. The court furnishes the standard; the jury adjusts the facts and pronounces them as up to or falling short of the requirements of the standard. When, however, the facts are clearly settled, and the course which common prudence dictates can be readily discerned, the court should decide the case as matter of law." (*Van Praag* v. *Gale*, 107 Cal. 438, [40 Pac. 555]; Shearman and Redfield on Negligence, sec. 26; *Davis* v. *Pacific Power Co.*, 107 Cal. 575, [48 Am. St. Rep. 156, 40 Pac. 950]; *Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 656, [62 Pac. 308, 64 Pac. 993].)

It is also not controverted that the motion for a nonsuit is substantially a demurrer to the plaintiff's evidence, and this being so, and the court having no right to pass upon the weight of evidence, every fact that plaintiff's evidence proves or tends to prove must be taken by the court to be proved. It must be taken in the strongest light as against the defendant (*Purnell* v. *Raleigh & G. R. Co.*, 122 N. C. 832, [29 S. E. 953]), and "at the hearing of such motion the evidence should be interpreted most strongly against the defendant." (*Wright* v. *Roseberry*, 81 Cal. 87, [22 Pac. 336]; *Warner* v. *Darrow*, 21 Cal. 309, [27 Pac. 737]; *Hanley* v. *Bridge Co.*, 127 Cal. 236, [59 Pac. 577].)

It is only in comparatively rare cases when the court is justified in saying as a matter of law that a given state of facts constitutes contributory negligence and precludes the plaintiff from recovery. It is easy to formulate a *rule* of *contributory negligence,* but it is much more difficult by that rule to measure the facts and determine incontestably the only conclusion warranted by the standard of ordinary prudence, caution and discretion. In the accidents occasioned by persons passing over the tracks of steam railroads, in order to obviate the imputation of contributory negligence, the con-

sensus of the opinion of men of ordinary care and prudence has become crystalized into the demand, recognized by all the courts, that the injured party must stop and look and listen before placing himself in a position of such manifest peril. But in the multifarious positions of hazard involved in the varied pursuits and environments of modern civilization it is apparent that seldom can the law prescribe with precision what specific acts of omission or commission shall prevent the recovery of damages for injuries received. In most cases, under proper instructions, the determination of the question should be left to the decision of a jury.

In the present instance, considering the evidence most favorably to respondent is it true that only one conclusion could be drawn by men of average caution and intelligence? And is that irresistible conclusion to the effect that respondent was guilty of such contributory negligence as to preclude recovery, notwithstanding the negligence of defendants? It is so insisted by appellants. The plaintiff testified that for two weeks he had been engaged at work as foreman ship carpenter in constructing and placing waterways in said vessel, as alleged in the complaint; that when he began his work the hatchways were all covered with spiked plank; ''that there were three decks on the vessel and four ballast hatches on each of the two lower decks and none on the upper deck, and these hatches were only used for ballast; that during his work there the men and himself were accustomed daily to traverse the lower deck, walking over these hatches, which were nailed down, and carrying timbers on their shoulders; that when he left at 12 o'clock, March 18th, the trimming or ballast hatches were all covered up; that they worked upon the ship with candle-light and it was too dark to do without it; that when he came back from lunch about 1 o'clock he went down the forward hatch and then walked aft on the lower deck; that he could not see much there, although there were a few lights scattered around with the men working; he walked on the starboard side in the same direction in which he had been accustomed to walk for two weeks and he fell into the ballast hole, and there was neither light, fender, guard nor rails there, and he could not see the hole in the darkness prevailing at the time; there was no person there to warn him, he had not been warned, and he did not know the ballast hatchway had been opened; and that was the first time it was open in two weeks;

the hatch is only about three feet square; there was very little ballast in the hold at the time, but some came down upon him after he fell in. He knew the usual way of guarding hatchways; some have ropes and stanchions; some have boxes, put down into these holes, so that the ballast can go through them when they are working, and when they are idle they have covers; they are supposed to be covered all the time; the ballast was thrown through the side port into the between decks and wheeled aft to the trimming hatch in the middle deck and dumped into that and so went through the corresponding hatch of the lower deck into the hold of the vessel; there was no cargo in the vessel and the work kept the coal dust moving all the time, especially on the lower deck.''

In the cross-examination the additional circumstances brought out which may be of some moment are as follows: The ship was partially ballasted before it was brought to Spear-street wharf where the accident occurred; respondent did not know the ballasting was not completed at the time of the accident; that earlier in the day he had seen on the ship Mr. McDonald, the foreman of defendants, but he had no conversation with him, and he could not say what Mr. McDonald was doing there; that he did not know of any other men on board except those in his employ; he supposed McDonald was there to do ballasting, but he did not ask him and he did not take the trouble to go and see if the trimming hatch was open or shut, because he had no business to do so and because he knew the hatch was shut when he went to lunch; it is usual to put a light at the hatch when it is opened up; if he had seen one it would have been notice to him to look out, that the hatch might be open; that when he came back from lunch he saw them putting ballast from the outside onto the between decks; it is piled up there and then wheeled and thrown down the trimming hatch; he did not know how much they had put in at that time; at the time he went down on to the lower deck he knew they were ballasting the ship, but took no pains to ascertain whether they were putting it through the center or the forward or the trimming hatch, and he did not hear any ballast dropping into the hold of the vessel; they would move the ballast with wheelbarrows from the middle deck to the place on the lower deck where they wished to deposit it in the hold; he did not see any wheelbarrows nor anyone near the ballast holes; he did not have

any candle with him; during the two weeks before the accident, the only holes on the lower deck were the main hatch; the bulk of the ballast is put in through the main hatch, only a small portion through the trimming hatch; in walking about onto the lower deck he knew they were ballasting the ship, front of you, but where this trimming hatch was you could not see more than two feet; there were lights on the lower deck on the starboard side of the vessel put there by his men but not near the trimming hatch.

In my judgment, the one circumstance lending some support to appellants' contention and adding some plausibility to their argument is the admission of respondent that when he returned from lunch he noticed the men engaged in the work of putting ballast into the ship. But the point at which they were loading was on the deck above and forty or fifty feet away from the trimming hatch into which he fell. Besides, construing the testimony most favorably to respondent, it must be held that he had no knowledge or notice that they were using at that time any of the trimming hatches, or that the hatch in question had been opened; and it must be conceded that neither guard, nor fender, nor light was placed about or near the opening to warn him of danger. Under the circumstances, keeping in view the fact that he had traversed this deck daily for two weeks, that his work called him there, that when he left for lunch the hatch was closed as it had been all the time for two weeks while he was at work, that he was without warning that it had been changed, and recalling his observation that "when the trimming hatch is opened it is customary to place a fender and lights about it to prevent accidents," can it be said that the law inexorably demands the conclusion that an ordinarily prudent and cautious man would not have followed the course pursued by respondent in this particular instance? It involves a question, in my opinion, open to candid disputation. Concerning it a difference of opinion among intelligent men is justified and to be expected. It was proper to submit it to the jury.

While each case, owing to its peculiar facts, is somewhat of a "law unto itself," the higher courts with jealous care have guarded from unwarranted invasion the province of the jury to pass upon the question of contributory negligence where it is open to reasonable controversy. In *Mosheuval* v. *District of Columbia,* 191 U. S. 247, [24 Sup. Ct. 57], the

facts were these: "A water box was in the sidewalk at the bottom of three steps leading from plaintiff's house and there was no other place of egress from the house to the street. The box was so situated about midway of the steps that in order to go from the lowest step to the sidewalk it was necessary to go either to the right or the left, which it would have been safe to do, or to take a step longer than usual in order to step over the box and clear it. It was about four inches square, projecting irregularly above the level of the street, and was without covering of any kind. . . . It was in the same dangerous condition at the time of the beginning of plaintiff's occupancy of the house, about nine months before the accident, and so remained without change, and it was visible from plaintiff's house. The plaintiff stumbled over it once before and she usually went on one side or the other and not over the box, as she knew an unusually long stride was necessary. . . . She testified that from the time she left her door she had the box in view a part of the time, and had it in mind all the time and remembered its dangerous character, but on this occasion she attempted to step over it, and did not take a sufficiently long step, and put her foot into the hole and was thrown, with the result that she suffered serious injury." The United States supreme court said that the question of contributory negligence *was one for the jury and not for the court.*

*Van Praag* v. *Gale,* 107 Cal. 438, [40 Pac. 555], is another persuasive case. In the opinion the following facts are detailed, as shown by plaintiff's evidence: "For ten years prior to March 1, 1893, the plaintiff had kept a cigar store on the west side of Polk street, between Sutter and Bush streets. Defendant for eight years had owned a building consisting of two stores north of and adjoining plaintiff's cigar store. The store of defendant next to plaintiff was a candy store, and in front of it and close to the building defendant had trapdoors placed in the sidewalk four feet wide by four feet four and one-half inches in length, which opened on hinges from the center, and when opened were turned back flat upon the sidewalk. A stairway led from the opening to the basement which was used by the tenants of defendant's building. The iceman usually came in the morning at 7 o'clock, the ashman about nine A. M. and the gas-man at intervals, and these doors were opened to give them access to the basement. The

sidewalk was fifteen feet wide, of which eleven feet were clear of the trapdoor. Plaintiff was entirely familiar with the opening *and had often been up and down the stairs,* had seen it daily for years and had spoken to defendant about it being dangerous. The opening had no railing nor protection around it. On the morning of March 1, 1893, about 9 o'clock, plaintiff being on the sidewalk in front of his store, was called by Mr. Weinshenk, who kept a jewelry store next north of the candy store, and went to the jewelry store either over or past the trapdoors, which were closed, talked with the jeweler a few minutes, during which interval the ash-man came and one of the trapdoors was opened to admit him to the basement, and the plaintiff while returning south toward his store, thinking of what the jeweler had said to him and perhaps looking at a paper with some figures upon it, fell into the opening and was seriously injured. Plaintiff had seen the ash-man drive up, but had not seen the trapdoor opened.'' Our supreme court held it was a proper case to submit to the jury.

If the law was properly declared in those two cases, then it cannot be held in the case at bar that the only reasonable conclusion that can be drawn from the evidence is that respondent was guilty of contributory negligence. It is claimed by appellants that the Van Praag case is an extreme one, but it has been quoted with approval by the supreme court in subsequent cases and it is in line with many other decisions of different courts, among which may be cited the following: *Muller* v. *Hale,* 138 Cal. 163, [71 Pac. 81] ; *Sellers* v. *Market St. Ry. Co.,* 139 Cal. 268, [72 Pac. 1006] ; *Woods* v. *City of Boston,* 121 Mass. 337; *McGuire* v. *Spencer,* 91 N. Y. 305, [43 Am. Rep. 668] ; *Lyman* v. *Co. of Hampshire,* 140 Mass. 311, [3 N. E. 211] ; *Engle* v. *Smith,* 82 Mich. 1, [21 Am. St. Rep. 549, 46 N. W. 21].

It may be admitted that plaintiff's testimony was somewhat inconsistent, and portions of it seem absurd, but that was a consideration to be submitted to the jury and it does not present a question of law to be determined by this court.

2. Complaint is made of the court's action in overruling the objection of appellants to the following question: ''Q. State whether or not any candle-light, even around the trimming hatch, around this hole, would enable you to see the hole itself, if there was no light at all in the hold of the vessel. A. No. Q. Why? A. The hold was black, and the deck

was black, and there was coal dust moving around all the time.  It was impossible to see the hole, unless there was a light below, or a hanging light, hanging lantern about there. Candles are no good." In my opinion the objection should have been sustained, as the question called for a conclusion, but it is apparent that the error was without prejudice.

The argument is made by appellants that the testimony in effect told the jury that it was important to know whether candles placed as defendants' witnesses say they were placed would enable one approaching the hatch *to see the opening itself,* whereas the real purpose and the only one required was to give warning that the hatch cover was off. But the answer to that is this: Respondent without objection had already testified substantially to the same effect when he said in cross-examination that "candles were no good," and that "they would not enable you to see on account of the coal dust." But granting to the testimony the full effect claimed by appellants, it was completely nullified and the question rendered harmless by this instruction of the court: "If from the evidence you find, that prior to the time that the plaintiff Doyle fell into the lower deck starboard ballast hatch, lights had been placed around said hatch by the employees of the defendants, and that said lights were at said hatch before and at the time the plaintiff fell into the hatch, then and in that case your verdict should be against the plaintiff and in favor of the defendants." This instruction in effect told the jury that it made no difference whether the opening was illuminated or not; if the lights were placed there by defendants they were absolved from liability.

3. Contention is made that $100 should have been stricken from the cost-bill. This allowance was made by virtue of subdivision 6 of "An Act to regulate Fees in the City and County of San Francisco, approved Feby. 9, 1866" (Stats. 1865-66, p. 68), which is as follows: "The prevailing party shall be allowed five per cent on the amount recovered, together with any sum by him so paid in a cause, as costs and disbursements, to be included in the judgment against the adverse party; provided said five per cent shall be allowed only in litigated cases and said percentage shall not be allowed to exceed $100 in any one judgment." The validity of the statute has been upheld in *Corwin* v. *Ward.* 35 Cal. 198, [95 Am. Dec. 93]; *Whitaker* v. *Haynes,* 49 Cal.

597; *Fanning* v. *Leviston,* 93 Cal. 188, [28 Pac. 943]; *Golden Gate L. Co.* v. *Sahrbacher,* 105 Cal. 114, [38 Pac. 635].   But it is claimed that it has been repealed by the statute passed in 1895 entitled, ''An Act to *establish the fees* of county, township and other officers and of jurors and witnesses in this state.''   (Stats. 1895, p. 268.)   The statute of 1895 does not, however, in express terms nor by implication re· peal subdivision 6 of the act of 1866.   The title of the act of 1895 does not purport to affect the question of costs in litigated or other cases.   The reasoning of the supreme court in the case of *Hilton* v. *Curry,* 124 Cal. 84, [56 Pac. 784], seems decisive of this question in favor of respondent.

There is no other point requiring attention.

The judgment and order denying the motion for a new trial and the order denying the motion to strike out the $100 percentage from the cost-bill are affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 22, 1907.