G. W. ABERNATHY v. H. D. STOWE.

*Bond—Condition—Encumbrance—Non-suit.*

1. Where the defendant gave his bond to the plaintiff for a sum of money, which was part of the purchase money for a tract of land, to be paid when the plaintiff should remove from said property "all claims, trespasses or incumbrances," and give the defendant possession of the same; *Held*, that the incumbrances intended were such as, at the execution of the bond, had some foundation in right, or at least color of right, and not such as might be set up arbitrarily and groundlessly by a mere pretender, and the trespasses meant, were such as intruders were perpetrating on the land at the time the bond was executed.

2. Where, in deference to the opinion of the judge, a plaintiff submits to a non-suit and appeals, the non-suit will be set aside and a new trial ordered, if in any view of the evidence offered the plaintiff has made out a *prima facie* case.

CIVIL ACTION tried before *MacRae, Judge,* at Spring Term, 1884, of GASTON Superior Court.

The plaintiff brought this action to recover the sum of money mentioned in the bond sued upon, of which the following is a copy :

"$538.70. For value received, I promise to pay G. W. Abernathy five hundred and thirty-eight dollars and seventy cents, to be paid when he removes from the property which he has sold me, and for a part of the purchase money of which this note is given, all claims, trespasses, or incumbrances whatsoever, and when he gives me full possession to said property, with all the rights, powers and privileges granted to the said G. W. Abernathy and A. Goodson, by a deed of conveyance from John Clemmer, for the tract of land, of which the tract the said G. W. Abernathy sold me is a part. The said deed from John Clemmer is dated August 8th, 1849, and, if it is necessary, I am to have the privilege to apply this money, or so much of it as may be necessary, to the removal of any incumbrances existing on this land bought by me from the said G. W. Abernathy; and I agree to pay eighty-five dollars of this money next October, if necessary, to pay legal expenses incurred by said G. W. Abernathy in attempting to remove said incumbrances, and this note is to draw interest from date. This March 25th, 1880.

(Signed)         H. D. STOWE. (Seal)."

The tract of land mentioned in this bond, as sold by the plaintiff, consisted of ten acres, including the "Clemmer or Abernathy mill" and the water-power and dam connected therewith.

The plaintiff alleged in his complaint that he had on his part complied in all respects with the terms, provisions and conditions provided and contained in the bond sued upon.

The plaintiff introduced a deed from John Clemmer to G. W. Abernathy and A. Goodson, bearing date August 8th, 1849, containing two hundred and thirty-seven acres, in which deed the following clause appears, being the clause referred to in the bond declared upon :

"And it is to be further understood that the said Goodson and Abernathy dam adjoining the island is to be kept up by them as high as it is, or to any necessary height clear of any claim of said Clemmer, or his heirs or assigns, in as full a manner as said Clemmer ever enjoyed, unto the said Goodson and Abernathy, and their heirs and assigns forever."

He also introduced a deed from A. Goodson to C. M. Abernathy, dated November, 1851, for one-half of two hundred and thirty-seven acres, his interest covering the land in dispute; also, a deed from C. M. Abernathy and wife to plaintiff G. W. Abernathy, dated November 2nd, 1878, for one-half of the two hundred and thirty-seven acres mentioned; also, a deed from G. W. Abernathy and wife to H. D. Stowe, defendant, dated March 25th, 1880, including the mills, and being the land for which this note was given, and containing the same condition set out in the above-mentioned deed to Goodson and Abernathy from John Clemmer; and, also, a deed from John Cathey and George Cathey to John Clemmer, dated October 30th, 1834; and, also, a deed from John Hoke to George and John Cathey, dated 1827, and a deed from John Colter, sheriff, to John Hoke, dated 1827.

The plaintiff then proved by A. L. Henderson, the surveyor, that these several deeds covered the land sold by plaintiff to defendant.

He then introduced Jonas Hoffman and G. W. Abernathy, who testified that John Clemmer and plaintiff, and those under whom they claimed, had been in possession of the land sold, claiming the same under the deeds offered by plaintiff, and operating the mills there, and keeping up the dams continuously until the year 1879 from 1837, and that the dam ran along up the river near the bank to a small island, and then across to a larger island. Jonas Hoffman further testified that he went to the mills and took charge of them himself for Clemmer in 1837, and remaining there in charge till 1844. The mill, at the time the witness went there, had the appearance of having been built some three or four years. G. W. Abernathy, plaintiff, as witness

for himself, further testified, that he sold this land to defendant in the spring of 1879, for eleven hundred dollars, and gave him a bond for title, and placed him in possession thereof; that the mills were at that time in good running order, and in same condition as provided for in the Clemmer deed, and that there were no claims, or trespasses or incumbrances thereon, that he knew of; that defendant paid something on account of the purchase money and executed the bond sued upon for the remainder at the time it bears date; and that defendant has been in possession and control of the property since the sale in the spring of 1879; that at the time the note sued on was given in March, 1880, witness made defendant an absolute deed and title, and the bond for title was surrendered; that in 1877 or 1878, C. J. Lineberger & Co., who were operating a cotton factory on the river nearly opposite the land sold, built a dam from their side of the river, commencing a little below and running across and joined to witness's fore-bay; this dam was higher than the one witness had, and gave him at his mills a greater head of water, and was no injury to his property, but a benefit; that witness built a part of this dam himself, and used the same in running his mills; that after witness sold the property to defendant, the mills were allowed to go down, and defendant hauled away some three or four hundred dollars' worth of property from the mills; that the fore-bay in the year 1879 was washed out by a freshet, and Lineberger & Co. put a temporary obstruction in the same, "a hedge"; that this was about fourteen feet wide, and could have been removed for from eight to twelve dollars; that witness told Lineberger not to put the same in, but Lineberger did, and agreed to move it at his own expense whenever the owners of the property wished to rebuild and go to work.

The witness also testified that before bringing the action he offered to remove this obstruction himself, and asked permission to do so, which was not given by defendant; and further, that at the time he made the bond to the defendant in the spring of 1879, and at the time he made the title in the spring of 1880, there was

enough water to operate the mills sold to defendant, and in same plight and condition as they were under the deed from John Clemmer to Abernathy and Goodson, of date August 8th, 1849; that he gave defendant possession and control of the property sold in the same manner and to like extent as was enjoyed by himself and predecessors under the John Clemmer deed.

The deed from John Clemmer to Abernathy and Goodson, of date August 8th, 1849, specified that it included the two mills.

The witness Abernathy testified that the race dug by Lineberger to run the lower factory was dug since his sale of the property to Stowe, and the execution of the bond sued upon.

The defendant then introduced the record of an action in Gaston Superior Court in favor of *W. A. Stowe* v. *Woodlawn Manufacturing Company*, that commenced in 1882.

To this the plaintiff objected. Objection overruled, and the plaintiff excepted.

This action was for damages caused on alleged diversion and appropriation of the water of the river above the property sold to defendant.

The defendant then offered

(1) A deed from Moses H. Rhyne and wife to M. C. Rhyne, bearing date 1871;

(2) Also a deed from C. J. Lineberger and others to the Woodlawn Manufacturing Company, dated September 1879;

(3) And a deed from C. J. Lineberger and others to the Lawrence Manufacturing Company, dated 1879.

The plaintiff objected to the introduction of each of the foregoing deeds offered by defendants. The objections were overruled and the plaintiff excepted. Defendant then introduced A. L. Henderson, who testified that the land described in the complaint in the action of W. A. Stowe v. Woodlawn Manufacturing Company, *et als.*, and claimed to be the property of plaintiff in that action, and alleged therein to be damaged, was the land sold by plaintiff to defendant, and for which the note declared upon was given. This witness also testified that the deeds introduced by

defendant included the bed of the river, adjoining the land sold to defendant, and for which the bond declared upon was given.

There was no evidence offered by defendant of any occupation of the property and assertion of any claim or right under the deeds introduced by them.

There was no evidence offered that either the Lineberger or Woodlawn Company, or Lawrence Company, or any other person or company, ever set up any claim to any part of the land or property sold to defendant by plaintiff until the commencement of the suit of W. A. Stowe v. the Woodlawn Manufacturing Company, *et als.*

The plaintiff contended that upon the evidence there was no incumbrance, claim or trespass upon the property sold, and that the conditions of the bond had been in all things substantially complied with.

The plaintiff further contended upon the evidence introduced, that there was no valid claim, trespass or incumbrance upon the property sold, and that the conditions of the bond sued upon had been in all things substantially complied with; that he had shown title to the lands, dams, mills and property sold, by possession under title for more than thirty years; that plaintiff had placed defendant in as full possession of the land as ever John Clemmer had enjoyed; that Clemmer had only a privilege, but that the possession of thirty years, under title, ripened his privilege into a good title; that the claims and incumbrances must be valid ones; that the filling up of the fore-bay was not an existing trespass; and that the incumbrances had been tried in this suit and were not valid.

The court intimated the opinion that under the facts as proven, there were incumbrances existing on the property and that plaintiff could not recover.

In deference to the opinion of the court, the plaintiff submitted to a non-suit and appealed.

*Messrs. Hoke & Hoke,* for the plaintiff.
*Mr. W. P. Bynum,* for the defendant.

MERRIMON, J. (after stating the facts).  We think that the intimation of the Court, that "under the facts as proved there were incumbrances existing on the property and the plaintiff could not recover," was not warranted by any proper view of the evidence produced on the trial.

The plaintiff introduced evidence that went directly to prove a good and perfect title, *prima facie*, in him to the land mentioned and referred to in the bond sued upon, and, giving this bond a proper interpretation, nothing appeared to the contrary. The plaintiff sold the land to the defendant in the spring of 1879, and then put him in possession of it, and he continued to have such possession from that time, until and at the trial, the plaintiff, in the meantime, having conveyed the title to him by proper deed, on the 25th day of March, 1880, the day on which the bond sued upon was executed.  This bond contained a condition, badly and obscurely expressed, but giving it a reasonable and just interpretation, it means that the defendant obliged himself to pay to the plaintiff $538.70 when, as soon as, and upon the condition, that the latter should relieve the land he had sold and conveyed to the former of "all *claims, trespasses* and *incumbrances* whatsoever, and when he gives me (the defendant) full possession to (of) said property, with all the rights, powers and privileges granted to the said G. W. Abernathy and A. Goodson by deed of conveyance from John Clemmer for tract of land of which the tract the said G. W. Abernathy sold me (the defendant) is a part."  That is, the money was to be paid to the plaintiff as soon as he made to the defendant a clean title to the land, including "all the rights, powers and privileges" appertaining thereto, granted by John Clemmer to the persons named in the bond.  If there were claims or incumbrances upon the land, or persons trespassing upon it at the time of the execution of the bond, the plaintiff was required to relieve the land from them, and to the end that this might the more certainly be done, it was stipulated in the bond, that the defendant *might* apply the money agreed to be paid, or so much thereof as might be necessary, in

the removal of any "incumbrances," and it was further stipulated, that the defendant would pay of the sum stipulated, $85, in October next after the execution of the bond, to pay "legal expenses."

It seems that the parties apprehended that there were "claims, trespasses or incumbrances" upon the land, but obviously if there were none, and the title to the land was good, including the rights and privileges appertaining thereto, then the plaintiff would be entitled to be paid the money the defendant had obliged himself to pay as part of the purchase money for the land.

The claims and incumbrances upon the land to be removed by the plaintiff were such as at the time the bond was executed had some foundation in right, or at least color of right, such as would require in some proper way an expenditure of money to remove them; they were not such as might be set up arbitrarily and groundlessly by a mere pretender. And the "trespasses" to be "removed" must imply such as intruders were perpetrating upon the land at the time the bond was executed, and as they continuously perpetrated until they were compelled to desist.

This seems to us a reasonable and just interpretation of the provisions of the bond just referred to, and the parties to it must be deemed to have so understood and accepted them.

The deeds put in evidence by the plaintiff on the trial, were not in any respect questioned, and the parol evidence introduced by him, if accepted as true by the jury, would have proven that the plaintiff had a good title to the land, including the rights and privileges conveyed by John Clemmer, and which he conveyed to G. W. Abernathy and A. Goodson; that he conveyed a good title to the same to the defendant, and that there were no "claims, trespasses or incumbrances" on the land at the time the bond was executed; unless "a hedge" temporarily put into the open fore-bay by Lineberger & Co., could be treated as a "trespass" to be removed, and as to that, the plaintiff offered before the action was begun to remove it, but the defendant would not allow him to do so, thus relieving him from further obliga-

tion in that respect, certainly, to the extent of putting such "trespass" out of the plaintiff's way to a recovery in this action.

The deeds put in evidence by the defendant failed to show the title to the land out of the platntiff at the time he conveyed it to the defendant; nor did they show any reasonable claim to, or incumbrance upon it; nor can we discover any claim to, or incumbrance on it made apparent by the transcript of the record in the action of *W. A. Stowe* v. *The Woodlawn Manufacturing Co. and others.*

These deeds were of recent date, junior by a great number of years to those introduced by the plaintiff and under which he derived title to the land, and there was no evidence going to show that any person ever had possession of the land sold by the plaintiff to the defendant claiming under them, or that any person set up any claim to this land until the bringing of the action by W. A. Stowe on the 5th of December, 1881, many months after the date of the bond, and the date of the deed by which the plaintiff conveyed the land to the defendant.

For the purpose of the appeal, it must be taken that the jury would have accepted the evidence on the part of the plaintiff as true, and so taking it, he proved a *prima facie* case on his part. It thus behooved the defendant, if he could, to disprove it, by showing some defect in the title conveyed to him by the plaintiff, or by showing that a third person had a reasonable claim to, or incumbrance upon the land, or that a "trespass" had been committed at the time the bond was executed that the plaintiff had failed to remove, or, he might have shown that he had expended the money agreed to be paid, or a part of it, in removing incumbrances, such as we have indicated.  This he did not do on the trial.  It was not difficult for him to show that some person pretended to have and assert a claim to the land, or an incumbrance upon it, at the date of the bond, manifestly unfounded. This might be done every day and indefinitely.  The plaintiff did not agree to remove such claims and incumbrances.  Taking the evidence produced on the trial by the defendant to be true,

the "claims, trespass or incumbrances" upon the land suggested by it were groundless and trifling, and not such as could seriously disturb the defendant's title to it, or his full and free enjoyment of all the rights and privileges the plaintiff undertook to convey to him. It may be that on another trial the defendant can establish a good defence to the action; we simply decide, that he did not do so on the trial had.

There is error, because of which, the judgment of non-suit must be set aside and a new trial granted.

To this end let this opinion be certified to the Superior Court of the county of Gaston.                    It is so ordered.