CAPITAL PRINTING CO. v. CITY OF RALEIGH.

(Decided May 15, 1900.)

*Overflow of Water—Defective Sewerage—Demurrer to Evidence—Effect of Demurrer—Extraordinary Rain Fall —Different Conclusions to be Reasonably Drawn as to the Effect of the Evidence—Negligence, or no Negligence.*

1. Upon demurrer to the evidence, the plaintiff's evidence will be considered as true, and taken in the most favorable light for it.

2. In reviewing a judgment of nonsuit, the Court will assume every fact proved, necessary to be proved, when the evidence tends to prove it.

3. When the facts are not conflicting and only one inference can be drawn from them by a reasonable mind, it becomes a question for the Judge alone.

4. When the facts are not clear to the mind of prudent and reasonable men, or if the evidence is not so plain that reasonable men might not reach different conclusions on the subject, it is a question for the jury to consider, under proper instructions by the Court, whether there was or was not negligence, which is a mixed question.

CIVIL ACTION for damages for injury caused by the alleged negligence of defendant in the construction and maintenance of a city sewer, tried before *Brown, J.,* at April Term, 1899, of WAKE Superior Court.

At the close of plaintiff's evidence, defendant moved to dismiss, as in case of nonsuit. His Honor held that there was no evidence of negligence on the part of defendant to go to the jury, and rendered judgment, as in case of nonsuit, and dismissed the action; to which ruling and judgment plaintiff excepted, and appealed to Supreme Court.

The evidence is recited in the opinion.

*Messrs. R. O. Burton,* and *A. J. Feild,* for appellant.
*Mr. W. L. Watson,* for appellee.

FAIRCLOTH, C. J.   The plaintiff alleges that its property was damaged by the negligence of the defendant.   At the close of the plaintiff's evidence the defendant moved to dismiss the action, as in case of nonsuit.   His Honor held that there was no evidence of negligence by the defendant to go to the jury, and rendered judgment of nonsuit.   The plaintiff excepted, and assigned said holding and judgment as error. In the argument in this Court the merits of the controversy were discussed at length, but the only question we can consider is whether the plaintiff's evidence was sufficient to authorize and require his Honor to submit an issue to the jury on the question of the defendant's negligence.

G. V. Barnes, president of the plaintiff printing corporation, testified that the plaintiff's printing house fronted on Martin street in Raleigh, and the paper, stock, books, forms, etc., were damaged in the basement several feet below the level of the street; that the water overflowed the street and sidewalk and entered the basement through windows fronting

the street, which windows extended below the level of the street, and were protected by area-ways. The stock was on shelving and tables in the basement, and the overflow and damage occurred at night on the 15th of May, 1898.

G. Norwood, the bookbinder, after describing the extent of the loss, said that nearly all of the articles ruined were damaged by water coming through the Martin street window.

C. B. Edwards testified:

"Remember rain of May 15, 1898. I saw high-water line on my fence. I live on Martin street adjoining printing shop. I think water rose high enough to flow over area-ways and into plaintiff's windows on Martin street. On Martin street culvert runs under street. There are two openings to culvert, one on each side of street, which are covered with iron gratings."

(It is admitted that there is a stone culvert crossing Martin street three by four feet which empties into a terra-cotta pipe two feet in diameter. The length of pipe is 175 feet and has a fall of ten feet from top of street to the end of pipe. The openings into the culvert are 3 feet 3 inches long by 18 inches wide, and 4 feet 10 inches long by 2 feet 2 inches wide, respectively. These openings are covered with grid-iron gratings, the open spaces between the bars being $2\frac{1}{2}$ and $2\frac{3}{4}$ inches respectively. The street is paved with Belgian block with stone-curbing from 6 to 8 inches in height.)

"Saw openings to culvert morning after storm. They were covered with trash. As water flows over the bars to gratings, leaves and paper catch on bars and gradually lap over one another and finally cross to the next bar and prevent the water from flowing through into the culvert. Then the sidewalk would become flooded. I saw the trash taken off the next morning after the storm. It consisted of green leaves, green twigs, branches of trees, pieces of wood, and a few

strips of paper. It was not ordinary trash. Was mostly leaves and twigs beaten off of trees by the storm. The reason that the sidewalk was overflowed was because the openings to the culvert became stopped up. If it had not been for the obstruction to the openings I think the culvert could have easily carried off any amount of water that might have fallen on the street. Remember the rain storm of May 18, 1894, when the sidewalk was overflowed. The arrangement of the gratings was the same on the night of May 15, 1898, that is, they were flush with the surface of the street. That when the gratings were flush with the street the openings were liable to become stopped up as already described. I have been out in the rain on two occasions and taken the trash off of the gratings with a rake to prevent the sidewalk from overflowing. After the storm of May 18, 1894, I complained to Mr. Blake, the Street Commissioner and City Engineer, about the gratings, and the city had them raised about four inches on iron legs so that the trash would pass under the bars to the gratings instead of over them. They remained in that condition for some time and were less liable to become obstructed than they were when flush with the street. The legs to the gratings were broken off by wagons or the street sweeper of the city some time before the storm of May 15, 1898, and were flush with the street on the night of the storm. I never knew the sidewalk to overflow but on two occasions, May 18, 1894, and May 15, 1898, when the storm was excessive and unusual. On every other occasion the culvert has been ample to carry off the water. I think it would have carried off the water on May 15 if the openings had not become obstructed. The street had not been swept for several days just before the storm. It was closed on account of my daughter, who was very sick. There was no need of sweeping the street. It was clean."

C. F. Von Hermann, who has been in the United States Weather Service for many years, and is now Chief of the Weather Bureau at Raleigh, deposed that, "The rain storm of May 15, 1898, was most unusual for this section. It was excessive, extraordinary and abnormal; never knew of one inch to fall in ten minutes before. Such an abnormal rain is popularly denominated a 'cloud burst.'" After a more particular account of the precipitation at short intervals, he said: "The rain storm of May 18, 1894, was also an abnormal storm. These two exceeded by far any others which we have recorded." To the question, "Although the storms of May 18, 1894, and May 15, 1898, were unusual, excessive and abnormal, may they not reasonably be expected to occur occasionally?" the witness said that they might be expected to occur again.

A. W. Shaffer was examined, and testified:

"Resides in Raleigh, and am a civil engineer by profession; made a survey and map of locality of plaintiff's shop; examined the locality on the morning of May 16, 1898, after the storm, and examined the gratings over the openings to the culvert. The accumulations on the gratings were not the ordinary street refuse, but leaves and green branches and other extraordinary accumulations. That he fixed the high-water line by evidences on the buildings and fences; that the water rose high enough, as shown by the high-water line he found, to flow into plaintiff's windows. The water was surface water only. That the culvert and terra-cotta pipe leading south under the adjacent lots are of ample capacity to carry off any storm of rainfall that we reasonably expect to happen in this climate. That it can carry off such extraordinary rainfalls as usually occur, but that he did not think that the terra-cotta pipe was sufficient to carry off the rainfall of May 18, 1894, or May 15, 1898. That if the pipe

had the same capacity as the culvert it could carry off any rainfall that might happen.   The street paving and the curbing and the grading of the street were properly done, and that the gratings over the openings to the culvert were such as are usual in cities and towns where the streets are kept clean. That the gratings were constructed skilfully, and were placed in the usual position.   That he has seen some grating that were raised on legs above the surface of the street, but they always had flaps or inclined sides to them, and were more likely to become obstructed than if the grating were flush with the surface of the street.   He has never seen any grating on legs without the side gratings anywhere but at this particular locality.   The universal method is to put them flush with the street.   If the gratings were raised on legs, as these gratings had once been and are now, the liability to become obstructed would be much less than if flush with the street.   That the area ways to the Martin street windows were sunken and broken away from the wall and in bad condition.   That they had since been built higher.   That if they had been at their present height on the night of May 15, the water would not have flowed over them."

These were the only witnesses examined.   The defendant's motion to dismiss the action was equivalent to a demurrer to the evidence, and the plaintiff's evidence will be considered as true, and taken in the most favorable light for it.   *Gibbs v. Lyon,* 95 N. C., 146; *Springs v. Schenck,* 99 N. C., 551.

An appellate court reviewing a judgment of nonsuit will assume every fact proved, necessary to be proved, when the evidence tends to prove it. *Howell v. Railroad,* 124 N. C., 24.

It is easy to lay down the general rule, but the difficulty lies in applying the rule to the facts in individual cases as they arise.   When the facts are not conflicting and only

one inference can be drawn from them by a reasonable mind, it becomes a question for the Judge alone. When the facts are not clear to the minds of prudent and reasonable men, or if the evidence is not so plain that reasonable men might not reach different conclusions on the subject, it is a question for the jury to consider, under proper instructions by the Court, whether there was or was not negligence, which is a mixed question.

It is not necessary to refer to the numerous authorities and decided cases on this subject. The principle is recognized and stated in *Tillett v. Railroad,* 118 N. C., 1031, and *Russell v. Railroad, Ibid,* 1098.

In the case at bar, the defendant relies on evidence that it had skillfully prepared every reasonable protection against damage, and that the storm on the night of May 15, 1898, was so extraordinary and abnormal, that it should not be held liable for the result, because it was not produced by its negligence. On the other hand, the plaintiff relies on evidence showing that the lower end of the drain-way was smaller than the upper end, and that the defendant had the knowledge and the experience of a similar rain fall in 1894, against which it provided, but allowed the improved protection to become worthless before May 15, 1898, which improved condition would have prevented the overflow. The plaintiff insists that these facts tend to show negligence and culpable liability.

From this condensed statement of the evidence, at present admitted to be true, we think there is room for different conclusions to be drawn by reasonable men. We intimate no opinion on the weight of the evidence, either way, nor on the ultimate liability of the defendant, either in its *quasi judicial* or *ministerial* character. Such questions, to which the

argument before us was mainly addressed, were not considered in the Superior Court, and are not before this Court.

Reversed.

DOUGLAS, J., concurs in result only.