MILLHISER v. LEATHERWOOD.

(Filed December 12, 1905).

*Nonsuit—Practice—Evidence.*

1. Where a plaintiff, in deference to an adverse intimation of the court, submits to a nonsuit, he is entitled in this court to the most favorable interpretation of the evidence, after excluding all that is against him.

2. Evidence that the plaintiffs held a claim against M, which was sent to the defendant, as their attorney, for collection; that M held claims against L secured by liens on L's property and that the defendant also was L's attorney; that it was agreed between the defendant as plaintiffs' attorney, and M, that if M would release the liens, the defendant would assume the payment of plaintiffs' claim against M, he stating that L, his client, had placed the money in bank to his credit for this purpose, and that the plaintiffs' account was not paid, *held*, that the court erred in deciding as a matter of law that the plaintiffs were not entitled to recover of the defendant the amount of their claim against M.

BROWN, J., dissents.

ACTION by M. Millhiser and Company against R. L. Leatherwood, heard by *Judge Thos. J. Shaw* and a jury, at the Spring Term, 1905, of the Superior Court of SWAIN.

This action was brought to recover the sum of $647, which it is alleged the defendant received on a claim he held for collection as attorney for the plaintiffs, and which, upon demand, he has failed to pay over. This allegation is denied in the answer. The evidence tended to show that the plaintiffs had sold and delivered goods to Marr & Co. to the amount of $1,000. They paid $230 and the account, then amounting to $730, was sent by plaintiffs to defendant as their attorney for collection. Coffin & McDonald owned and operated a mill and had contracted with one W. W. Ladd to saw logs for him. Coffin & McDonald failed to pay their hands and

Marr & Co. advanced the money, at their request, to the hands and took an assignment of the claims of the hands against Coffin & McDonald, and filed liens upon lumber which belonged to Ladd. The defendant also represented Ladd as attorney. It was agreed between the defendant, as plaintiffs' attorney, and W. T. Conley, acting for Marr & Co., that if Conley would release the liens and take down the notices of sale, which had been posted on the lumber piles, the defendant would assume the payment of the account of the plaintiffs against Marr & Co., he stating at the time that Ladd, his client, had placed the money in the bank to his credit in order to pay the amount secured by the liens and discharge the same, and that he would pay the amount for which liens were filed out of this money. W. T. Conley, a witness for the plaintiff, in this connection, testified: "Defendant said that if I would take notices of sale off the lumber, so that he could load it, he would pay the Millhiser debt to the amount of the notices taken off. The debt amounted to $630 and the liens to $700." The witness further testified: "I told him the Millhiser debt was what I wanted to be paid, and that I would go on and take the liens off if he would apply the money to the Millhiser debt, and I then went and helped to take the notices of sale off the lumber, and it was then loaded and shipped away. Ladd had Noble to load the lumber. Leatherwood said he would pay the amount to Millhiser & Co. instead of paying it to me, as he held the claim against me, and I agreed to this. The next morning I went to the defendant to get a receipt, and he said that he was busy right then, and would give a receipt just as soon as the lumber was loaded." About two weeks afterwards, Conley saw the defendant, who told him that some of the checks he had drawn on the fund in bank, had been returned protested, as they had drawn the money out before his checks were presented. Conley then asked defendant for a receipt for the claim of Millhiser &

Co. against Marr & Co., and he replied that he would rather wait until he collected the money out of them. Defendant paid some of the lienors, but stopped paying when the money had been drawn from the bank.

Sheriff Teague (who held the execution for the sale of the lumber, issued in the proceedings to enforce the liens) testified that the defendant requested him to postpone the sale, stating at the time that the money to satisfy the liens would be sent to the bank and might be there that day. The sheriff refused to postpone the sale, when defendant told him if he would go to Asheville with him to see about the money, he would pay his expenses. They went and saw Rankin, the bank's cashier. They inquired of him if any money was there for the defendant and he said there was not. Defendant then said: "We will go to dinner and come back." They returned to the bank after dinner and the cashier told them that the bank had been wired to put $1,000 to defendant's credit. The sheriff then wired his deputy to postpone the sale. The witness Teague further testified: "The next day the defendant gave me a check for the liens. I sent the check to the bank and Rankin told me defendant had no funds to meet the check, as Stewart had wired the money out of Leatherwood's hands, or countermanded his order. Defendant said this money was to pay off the liens. After refreshing my recollection, I remember that the defendant told Conley he would receipt him for the Millhiser debt if he would release the liens." There was other testimony corroborating that already stated. The defendant testified in his own behalf that he thought the $1,000 was in the bank when he gave his check to Sheriff Teague for $142. Rankin told him, not that the money was in the bank to his credit, but that the bank had received a telegram to put $1,000 to his credit, and that the order to do so was immediately countermanded. He stopped shipping lumber and was not afterwards notified that any money had been placed to his credit.

Defendant then testified: "I never told Conley that I would give him a receipt for the Millhiser claim till money was placed to my credit. If there was any conversation about the receipt, I don't remember it. I owed Marr & Co. an account, and I might have agreed to credit it on the Millhiser matter and give him a receipt, but I didn't do it." He further testified that he did not tell anyone that he had $1,000 in the bank. If anything was said about it by him, it was when he returned from Asheville and repeated what Rankin had told him. The other material portions of the plaintiff's evidence were denied. The witness Rankin testified that the bank had received a telegram to pay defendant $1,000, but that in about an hour the request had been withdrawn, and that he had no time to place the amount to the credit of defendant and that he had never notified him of it. No such amount was ever placed to his credit. He had searched for the telegrams, but could not find them, and thought they were burned. The order authorized the bank to draw for $1,000 and place that amount to defendant's credit. He also said that he did not recollect telling Teague what the latter stated he had said to him at the bank about defendant having a credit there of $1,000.

At the close of the plaintiff's testimony, the defendant moved for a judgment of nonsuit under the statute, which the court refused, and at the close of all the testimony he renewed the motion. The court sustained it and entered judgment of nonsuit. Plaintiffs excepted and appealed.

*Fry & Rowe* for the plaintiffs.
No counsel for the defendant.

WALKER, J., after stating the facts: A judgment of nonsuit requires us to assume that all the evidence which tends to establish the plaintiff's case is true, and to view it in the aspect most favorable to the plaintiff, drawing every reason-

able and legitimate inference therefrom which the jury could have drawn had they passed upon the case. All the facts that make for the plaintiff must be taken as established and considered by us, and all those that make against them must be rejected. In a few words, they are entitled in this court to the most favorable interpretation of the evidence, after excluding all that is against them. *Springs v. Schenck,* 99 N. C., 551; *Purnell v. Railroad,* 122 N. C., 832; *Printing Co. v. Raleigh,* 126 N. C., 516. In *Brittain v. Westhall,* 135 N. C., 495, the principle was thus formulated: "It is well settled that on a motion to nonsuit or to dismiss under the statute, which is like a demurrer to evidence, the court is not permitted to pass upon the weight of the evidence, but the evidence must be accepted as true and construed in the light most favorable to the plaintiff, and every fact which it tends to prove, must be taken as established, as the jury, if the case had been submitted to them, might have found those facts upon the testimony." It was said in *Avery v. Stewart,* 136 N. C., 430: "The right of the plaintiff to have (the case) submitted to the jury cannot be denied or abridged, provided there is some evidence tending to establish the plaintiff's contention." The same principle applies with equal force when a plaintiff, in deference to an adverse intimation of the court, submits to a nonsuit. *Gibbs v. Lyon,* 95 N. C., 146; *Springs v. Schenck, supra; Abernathy v. Stowe,* 92 N. C., 213. The court declares in the case last cited that the plaintiff is entitled to go to the jury if in any view of the evidence he has made out a *prima facie* case. The question as to what is evidence fit to be considered by the jury was discussed by us in *Byrd v. Express Co.,* and *Campbell v. Everhart,* at this term.

We will now proceed to examine this case in the light of this well settled rule. If the first ruling made by the court was right, that is, the refusal to nonsuit the plaintiff at the close of his testimony, then the second ruling was wrong, as

none of the evidence afterwards introduced could be considered against the plaintiff, but only such as was in his favor. But we pass by the first ruling, as it was eliminated when the defendant introduced testimony, and we are now confined to the second ruling dismissing the action at the close of all the testimony. It appears that the plaintiffs sued Marr & Co. for the recovery of the debt due to them and obtained judgment. Defendants appealed to this court and it was held here that the transaction between Marr & Co., the bank and Leatherwood, constituted a payment of the plaintiff's claim and a new trial was awarded. *Millhiser v. Marr,* 128 N. C., 318. The case was again tried below when the defendant got a judgment and the plaintiff appealed. Upon testimony substantially identical with that we have before us, this court held that there was evidence for the consideration of the jury upon the plea of payment, and that the only question involved was one of fact, whether the money had been placed in the bank to Leatherwood's credit, and, the jury having found with the defendant, the judgment was affirmed. *Millhiser v. Marr,* 130 N. C., 510. Leatherwood is certainly not bound by either of those decisions, under the doctrine of *res judicata,* for they cannot have that force and effect as to him, he not having been a party to the action. But if we are to follow those cases, as precedents, there is no way of avoiding the conclusion that His Honor erred in the trial of this cause, when he withdrew the case from the jury and decided as a matter of law that the plaintiff was not entitled to recover, in any view of the evidence. In the first of the decisions of this court to which we have referred, it is said: "In what way Ladd drew the money out of the bank does not appear, but it does not concern defendants. Under their agreement with Leatherwood, who had it in bank to his credit, it had been appropriated for the payment of plaintiff's debt, and if by negligence or otherwise upon the part of the attorney or the bank, Ladd got hold of the money,

plaintiff must look to them and not to defendants.   Plaintiffs were acting through their agent, having placed in him authority and trust, and are bound by his acts in dealing with defendants.   In no sense was he the agent of the defendant, and they lost all control over, right to and responsibility for the money when he agreed to and did accept it in payment of his client's debt."   128 N. C., at p. 321.   And in the second of the decisions the court says: "His Honor committed no error in holding, at the close of the evidence, that all there was in the case was whether or not the $1,000 had been placed in the bank to the credit of Leatherwood to pay off the liens.   There is no suggestion that Leatherwood misapplied the fund, but it is admitted that he did not do so. Under the decision of this court (*Millhiser v. Marr,* 128 N. C., 318), it is held that plaintiffs' debt against defendants was settled when W. T. Conley released his lien and agreed that his money in Leatherwood's hands should be applied to that purpose."   130 N. C., at p. 512.   Without discussing or deciding the question as to the liability of the defendant, we simply hold that there was evidence for the jury upon the issue raised by the pleadings.   We prefer not to intimate any opinion at the present stage of the case as to the liability of the defendant, nor until we have a finding of the jury upon the facts.   They may find against the plaintiff, and it may not therefore become necessary ever to decide that question, and if they find for the plaintiff, we do not now know exactly how the matter will be presented, if there is an appeal.   We fully concur in what is said by the court in *Millhiser v. Marr,* 130 N. C., 512, namely, that there is no suggestion, and we add, no evidence that Leatherwood ever misapplied the fund or any part of it, nor indeed that he ever had it in his actual possession.   His liability must depend upon facts, from which it will appear that he has derived no personal benefit from the transaction.

There are other exceptions in the case, but it is not neces-

sary to consider them, as the decision upon the matter discussed is sufficient to dispose of the appeal and the other questions may not again be presented. We will suggest, however, that if the plaintiffs expect to recover upon any other ground than that stated in the complaint, for example, upon the ground of negligence, they must amend their pleading. They can recover, if at all, only according to the allegations of their complaint. *Faulk v. Thornton,* 108 N. C., 314.

There was error in the ruling of the court. The nonsuit will be set aside and a new trial awarded.

Error.

BROWN, J., dissenting: I am impelled to dissent from the opinion and conclusion in this case. 1. The allegations of the complaint are to the effect that the defendant received the money for his client, and the action is evidently brought to recover the money so had and received. There is no evidence that the defendant ever received the money or anything else in payment of the debt.

2. If the defendant is to be charged with negligently releasing the lien on the lumber, which it is claimed he held for his client's benefit, that would involve a radical amendment to the pleadings and practically a change in the cause of action. As no amendment was asked for in the Superior Court or in this court, I think the judgment should be affirmed.